IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 20–cr–30048-SMY |
| DANTE R. CLARK, | ) |
| Defendant. | ) |

# ORDER

**YANDLE, District Judge:**

Defendant Dante R. Clark is charged with possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A), and felon in possession of a firearm in violation of 18 U.S.C. 922(g)(1) (Doc. 14). He moves to suppress evidence recovered after what he contends was an illegal traffic stop by Drug Enforcement Agency ("DEA") Task Force Officers in East St. Louis, Illinois. (Doc. 33). The Government filed a memorandum in opposition to the motion, (Doc. 38), and Defendant filed a Reply (Doc. 54). The Court held an evidentiary hearing on the motion on April 15-16, 2021 (Doc. 63). For the following reasons and those stated on the record, Defendant's Motion to Suppress is **GRANTED**.

## Factual Background

In March, 2020, a confidential source ("CS") told DEA Special Agent Jarrett Neff that a person going by the name "Dirty" was selling illegal drugs out of Apartment 1, 910 Gross Avenue, East St. Louis, Illinois (Doc. 38, p. 1). The CS reported to Agent Neff that he/she had been in the apartment several times and observed "Dirty" making crack cocaine in the kitchen

and storing it in the closet of an upstairs bedroom (*Id*. 1-2). The CS also told Agent Neff that "Dirty" would sell the drugs either in the apartment or on the driveway and that "Dirty" drove a blue Hyundai Tucson with a Texas license plate bearing the number LSZ 6425 (*Id.*). Agent Neff had never worked with the CS before and had never heard of "Dirty" (Doc. 66, pp. 41, 49).

On March 3, 2020 at 12:50 p.m., Agent Neff, along with Task Force Officers Kyle Waddington and Gregory Degener, began a surveillance operation of the apartment identified by the CS (*Id*. 21, 23). Agent Neff was observing the apartment while Officers Waddington and Degener were in the area and in communication with Agent Neff (*Id*. 22).

At 1:40 p.m., Agent Neff observed a White female drive up to the residence (*Id*. 23). She entered the residence, exited within 45 seconds, and drove away (*Id.*). Ten minutes later, a Black female drove up to the residence, entered the residence, exited within 45 seconds, and drove away (*Id*. 23-4). Five minutes later, Agent Neff observed a male and female exit the residence, locking the front door as they left (*Id*. 24-5). They got into the Hyundai Tucson with Texas plates described by the CS (*Id*. 25-6). Agent Neff, who lost sight of the vehicle, contacted Officers Waddington and Degener, relayed what he had observed, and asked them to locate the vehicle and conduct a traffic/investigatory stop (*Id*. 26). Officers Waddington and Degener stopped the vehicle. The occupants of the vehicle were Defendant Clark and Charlotte Hawkins (*Id*. 184).

Prior to the stop, Officers Waddington and Degener were stationed in a vehicle on Lake Avenue near Dablizt Sport and Grill Bar in East St. Louis (*Id*. 121). When Agent Neff contacted them to stop the Hyundai Tuscon, they headed southeast on Lake Street towards 15th Street (*Id*. 123). They spotted the vehicle travelling southwest on North 15th Street (*Id*. 124). Officer Degener testified that they observed the vehicle disregard a stop sign at the corner of 15th and Lake Streets driving 15 to 20 miles per hour (*Id*. 125). According to Officer Degener, they caught

up with the vehicle on 15th Street, passed the southwest corner of 15th and Lynch Streets, activated the emergency lights, and stopped the vehicle (*Id*. 127-129).

A video from the dash camera of Officer Degener's patrol car shows the officers stopping Clark's vehicle near the intersection of 15th and Lynch Street; it does not show a traffic violation at 15th Street and Lake. A video recording from a camera at a nearby liquor store which was submitted by Defendant with his motion shows that Clark came to a full and complete stop at the corner of 15th and Lynch Street.

In his original report, Agent Neff stated that the officers conducted a traffic stop because Clark had run a stop sign on the corner of 15th and Lynch Streets (*Id*. 74-75). He testified that he made this assumption because when he arrived at the scene, the vehicle was stopped south of that intersection (*Id*. 79). After Defendant's motion to suppress was filed, he contacted Officer Waddington who agreed that the traffic violation could not have occurred at 15th and Lynch Street (*Id*. 76-7). Officer Waddington then filed an amended report on October 6, 2020, stating that the traffic violation occurred at 15th and Lake Street (*Id*. 75, 139, 198; Doc. 38-1).

Officer Waddington testified that after the vehicle was stopped, he approached the passenger side, returned to the police car, and told Officer Degner he smelled marijuana coming from Ms. Hawkins' purse (Doc. 66, pp. 136, 184). He also testified that he returned to Clark's vehicle and spoke to Clark (between the two vehicles) who told him that he had just smoked a "blunt" and had marijuana in the car (*Id*. 186). Officer Waddington then asked Ms. Hawkins to exit the car (*Id*. 187).

Officer Degener testified that he then approached the passenger side of the Tucson, opened the rear passenger door and smelled an overwhelming scent of marijuana (*Id*. 136). He found a black bag on the backseat that contained a gun, marijuana, and pills (*Id*. 135-6).

Officer Waddington testified that he observed smoked marijuana blunts ("roaches") in the center console of the vehicle (*Id*. 154, 187). He did not find any marijuana in Ms. Hawkins' purse (*Id*. 208). The Officers arrested Clark (*Id*. 134-6, 188).

Neither Officer Waddington nor Degener made a contemporaneous report of the traffic stop (*Id*. 138-139, 155). They did not issue Clark a ticket for running a stop sign (*Id*. 151-2). They did not tell Agent Neff that they found roaches and blunts in the vehicle (*Id*. 96, 212-3). They did not take photographs of the roaches and blunts (*Id*. 156-7, 191). They did not seize the roaches or blunts (*Id*. 157). They allowed Ms. Hawkins to drive the vehicle away from the scene (*Id*. 157, 213). Neither Officer Degener nor Waddington mentioned the discovery of the roaches or blunts to anyone prior to their testimony at the April 2021 hearing (*Id*. 194-5). The marijuana seized from Clark's vehicle was recorded as "red Dank Nuggs container, 1.8 ounce of strawberry punch, blue Dan Nuggs container" – edible marijuana that was in a closed container located in the bag on the back seat of the vehicle (*Id*. 90-92, 96).

In his request for a search warrant, Agent Neff did not specify that the marijuana found in the car was in the form of fruit-flavored edible marijuana located in a sealed container. The affidavit does not state that the officers found marijuana "blunts" or "roaches" in the vehicle.

### **Discussion**

Clark argues the officers lacked probable cause to stop his vehicle, search it, and to search the residence at 910 Gross Avenue. The Fourth Amendment allows police officers to perform a traffic stop when they have a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 572 U.S. 393, 396 (2014). That is, officers must have an "articulable and reasonable suspicion" that the driver committed a traffic violation or some other crime. *Delaware v. Prouse*, 440 U.S. 648, 663 (1979); *United States v.*

*Jackson*, 962 F.3d 353, 357 (7th Cir. 2020). However, officers may not prolong a traffic stop beyond what is necessary to issue a citation unless they have additional reasonable suspicion of independent criminal activity to justify a seizure. *Rodriguez v. United States*, 575 U.S. 348, 25405 (2015). In evaluating reasonable suspicion, the Court considers the totality of the circumstances. *United States v. Cortez*, 449 U.S. 41, 417 (1981).

The Government first argues that the officers conducted a valid *Terry* stop based on the surveillance and the belief that Clark was involved in distributing illegal narcotics. *Terry v. Ohio*, 392 U.S. 1, 21 (1968) (finding that an investigatory stop of a suspect does not violate the Fourth Amendment if the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."). The Court disagrees.

Agent Neff met the CS for the first time 48 hours prior to the surveillance. He had no history with the CS and no basis to evaluate their reliability or credibility. The CS provided only general information of past criminal activity and no information regarding future criminal activity. Agent Neff observed what he believed to be criminal activity within 45 minutes of beginning surveillance – two separate people entering the home for a short period of time and then Clark and Ms. Hawkins leaving the house. He did not observe any drugs or money being exchanged. He also did not observe the house for any period of time prior to March 3, 2020. The generalized and uncorroborated information given by a new CS, coupled with Neff's limited surveillance and the lack of any observable criminal activity did not provide an objective basis for reasonable suspicion under the Fourth Amendment, and thus, did not justify a *Terry* stop of the Clark's vehicle. *United States v. Cole*, ___ F.3d ___, 2021 WL 1437201, *3 (7th Cir. 2021) ("Though reasonable suspicion is a lower standard than probable cause, it must still be *reasonable*

– a *Terry* stop requires more than curiosity, inchoate suspicion, or a hunch." (emphasis in original)).

Next, the Government argues the traffic stop was justified because Officers Waddington and Degener observed Clark running a stop sign at 15th and Lake Street. But the officers' testimony regarding the stop lack credibility. Agent Neff, who was not present for the traffic stop, penned the original report stating that the traffic infraction occurred at 15th and Lynch Street. However, after Defendant filed the instant motion to suppress – 9 months after the stop – Agent Neff discovered that there was a problem; the officers' dashcam video showed that the infraction could not have occurred at 15th and Lynch Streets. Thereafter, and after speaking with Agent Neff, Officer Waddington issued an "amended report" stating that the stop took place at 15th and Lake Street. The Court is also incredulous that Officer Waddington, who had difficulty recalling specific and significant facts related to this case, was nevertheless able to recall the specific location of the stop without reference to any documents made contemporaneous to the stop (of which there are none).

The Court also finds that the officers' testimony regarding the strong smell of marijuana emanating from the car lack credibility. In his application for a search warrant, Agent Neff stated that the officers smelled marijuana during the traffic stop and that "marijuana was seized"; the obvious inference being that the marijuana seized produced the smell. What was missing from the affidavit, however, is the significant detail that the marijuana seized was fruit-flavored edible marijuana that was in a sealed container in a backpack on the backseat of the vehicle.

At the hearing, Officer Waddington first testified that he smelled marijuana coming Ms. Hawkins' purse. But both he and Officer Degener also testified and stated for the first time that they found marijuana in the form of blunts and roaches in the vehicle. They did not

contemporaneously share this information with Agent Neff, nor did they seize or document this evidence. They testified that due to poor judgment, inadvertence, and mistake, they allowed Ms. Hawkins to drive the vehicle away with the evidence. And, significantly, while they acknowledged that this information was relevant and important to a finding of probable cause for a search warrant, they did not share it with Agent Neff or anyone before the hearing. They did not file an amended report regarding these findings even though they did amend their report to state where they believed the traffic infraction occurred.

## Conclusion

For the foregoing reasons and those stated on the record during the hearing on Defendant's motion to suppress, the Court finds that neither the stop, seizure, nor search of Defendant's vehicle on March 3, 2020 were supported by probable cause, and as such, they were unconstitutional. Accordingly, Defendant Clark's Motion to Suppress (Doc. 33) is **GRANTED**; any evidence discovered as a result of the search and seizure must be suppressed.

**IT IS SO ORDERED.**

**DATED: June 22, 2021**

**STACI M. YANDLE**
**United States District Judge**